UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ONYX RENEWABLE PARTNERS L.P.,

                     Plaintiff,

       v.

HILARY KAO,

                    Defendant.

No. 22-cv-3720 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

      Plaintiff Onyx Renewable Partners L.P. ("Onyx"), a renewable energy company that develops commercial and industrial solar projects, brought this action against Defendant Hilary Kao, its former general counsel.  The Complaint alleges that Defendant misappropriated Onyx's trade secrets under the Defend Trade Secrets Act ("DTSA"), *see* 18 U.S.C. § 1836(b)(1), *et seq.*, breached his fiduciary duties to the company, and breached his obligations pursuant to his employment contract.  Now before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the motion is denied.

## BACKGROUND

      The following facts are taken from the Complaint, and the Court construes them to be true for the purposes of the present motion.  *See Lundy v. Cath. Health Sys. Of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

      Plaintiff Onyx provides integrated solar energy systems—covering all aspects of development, construction, and operation—for entities seeking to use solar energy.  Compl. ¶ 12.

Onyx alleges that it has devoted considerable resources to develop trade secrets critical to its business, including, but not limited to, "the financial models and documentation under which Onyx finances portfolios of solar energy systems and structures the purchase and sale of portfolios of solar energy systems." *Id*. ¶ 14.

Defendant Kao joined Onyx as interim general counsel in September 2017 and assumed the role on a permanent basis in January 2019. *Id*. ¶ 16.  In that role, he was involved in negotiating the contracts governing the financing and development of each solar energy system, and thus had access to sensitive Onyx information. *Id*. ¶¶ 19–21.  Accordingly, the company required him to execute an Employment, Confidentiality, and Non-Solicitation Agreement, *see* Coogan Decl., Ex. 2 (the "Employment Agreement"), which provided, among other things, that Defendant could only use Onyx's Confidential Information (as defined in the Employment Agreement) as necessary to perform his duties, further requiring that Defendant return such information to Onyx upon the termination of his employment. *Id*. ¶¶ 25–35.

Defendant resigned from Onyx on May 17, 2021, following the departure of his wife, Ja Kao, from the company. *Id*. ¶¶ 37–38.  The Complaint alleges that, two days prior to his resignation, Defendant plugged a personal storage device into his company laptop, *id*. ¶ 44, and, within minutes, began to download some 10,507 files from Onyx's cloud-based secure dataroom, *id*. ¶ 45.  These documents allegedly included confidential documents and trade secrets, *id*. ¶¶ 52–57, and Defendant continued to access and use them following his resignation, *id*. ¶¶ 87–88, 90, 92, 94–96.  On June 15, 2021 and again on July 1, 2021, Onyx wrote to remind Defendant of his obligation not to misuse Onyx's Confidential Information, further asking him to return his work laptops, and requesting that he certify that he had destroyed the documents he had downloaded. *Id*. ¶¶ 97–98.  Nonetheless, on July 2, 2021, Defendant allegedly connected a second personal

storage device to his Onyx laptop and interacted with the files. *Id.* ¶¶ 99–107. Only following his alleged copying of the files to his personal devices did Defendant return his Onyx computers. *Id.* ¶ 108. To date, Defendant has not certified that he destroyed the documents he downloaded on May 15, 2021, or any other Onyx Confidential Information in his possession. *Id.* ¶ 109.

On April 26, 2022, Defendant's wife announced that she was leading a new business, 42 Renewables, which will compete with Onyx in "acquiring, developing, constructing, and operating commercial and industrial solar energy products." *Id.* ¶¶ 111–12. "Upon information and belief," the Complaint alleges that Ms. Kao "begins her leadership of this solar energy business with unfettered access to Onyx's trade secrets which form the building blocks of a solar energy business due to her husband's misappropriation of the Onyx materials." *Id.* ¶ 113. After "her efforts to reach an amicable separation with Onyx failed," Def's Mem. at 1, Ms. Kao filed a state action against the company, *Ja Lee Kao v. Onyx Renewable Partners LP, et al*, No. 654411/2021 (Sup. Ct., N.Y. Cnty. Jan. 3, 2022), and Onyx responded with several counterclaims. On May 6, 2022, Plaintiff Onyx filed this federal action, and Defendant timely moved to dismiss on August 12, 2022. The Court heard oral argument on the fully briefed motion to dismiss on January 12, 2023.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cnty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a claim with requisite "facial plausibility," a plaintiff must allege enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678. Facts merely "consistent with" liability or raising "conceivable" claims do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). In considering a motion to dismiss,

3

courts must construe a complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Lundy*, 711 F.3d at 113.  The Court need not, however, credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.      The Complaint States a Claim of Trade Secret Misappropriation Under the DTSA

To state a claim of trade secret misappropriation under the DTSA, a plaintiff must plausibly allege both that: "(1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20-cv-8159, 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021); *see* 18 U.S.C. § 1836(b)(1).  For the reasons explained below, the Court concludes that Onyx's Complaint meets both prongs and thus plausibly alleges trade secret misappropriation.

#### A.  Onyx Plausibly Alleges that it Possessed Trade Secrets

To determine whether information constitutes a trade secret under the DTSA, courts in this Circuit apply a six-factor test, considering:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (quoting *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990)) (cleaned up).  "These factors are guideposts, not elements," and a plaintiff need not "plead every single factor" for the relevant information to constitute a trade secret. *Id*.  "[T]he question of whether proprietary information qualifies as a trade secret is ordinarily a question of fact not resolvable on

a motion to dismiss," and DTSA claims should only be dismissed for failure to state a claim "where [the purported trade secrets] are not actually secret or there is no discernible economic value from them not being generally known." *Kraus USA, Inc. v. Magarik*, No. 17-cv-6541, 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020).  Furthermore, while "the Second Circuit has not expressly articulated a specificity requirement, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17-cv-589, 2018 WL 6173349, at *3 (S.D.N.Y. Oct. 6, 2022); *see also, e.g., Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258–59  (S.D.N.Y. 2014) (collecting cases), *aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-cv-9292, 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008) (observing that "[e]very court to have opined on this issue has ruled that specificity is required," and collecting cases).

The Complaint here plausibly alleges that Onyx possessed trade secrets under the DTSA. Onyx alleges that its trade secrets include

> the financial models by which Onyx determines the commercial viability of solar projects; the financial models and documentation under which Onyx finances portfolios of solar energy systems and structures the purchase and sale of portfolios of solar energy systems; the engineering knowledge needed to draft plans for solar energy systems; Onyx's network of sub-contractors and suppliers; the operational knowledge needed to maximize the output of these solar energy systems; and Onyx's list of both current and potential customers.

Compl. ¶ 14.  It further alleges that it developed these purported trade secrets over the course of several years, based upon its experience "identify[ing] and develop[ing] the solar energy systems in the portfolio," and that this information provided Onyx with a competitive advantage in the solar energy market.  *See id.* ¶¶ 56, 59; *see also Iacovacci*, 437 F. Supp. 3d at 381 (finding

information constituted trade secrets where the plaintiff alleged the time invested in developing the putative trade secrets and that they were a valuable asset of the company).

Onyx additionally alleges that it undertook extensive measures to guard the secrecy of the purported trade secrets. The financial models, for instance, are not in the public domain, Compl. ¶ 60, and the company uses

> employee confidentiality, non-disclosure, restrictive covenant agreements; password-protected electronic devices and dataroom; maintaining such information on an intranet and dataroom that restricts employee access to those who have a reasonable need-to-know; and limitations on the dissemination of information on a need-to-know basis.

*Id*. ¶ 121. Such security measures have been held sufficient for information to meet the DTSA definition of a trade secret. *See, e.g. Kraus USA, Inc.*, 2020 WL 2415670, at *6 (S.D.N.Y. May 12, 2020) (reasonable measures include the use of confidentiality agreements and storing information on username and password protected computer systems); *Iacovacci*, 437 F. Supp. 3d at 381 (finding putative trade secrets adequately alleged where security measures included a "firewall" and "log-in and password protection"); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-cv-211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) ("Defendants have alleged that they have taken reasonable measures to keep the information secret by making those who use it subject to confidentiality provisions and limitations, and only making it accessible through strictly controlled servers such as the Customer Exchange.").

The Complaint also meets any specificity requirement for adequately pleading the existence of a trade secret. Indeed, it even identifies a document by name containing the financial models that it alleges Defendant misappropriated—the spreadsheet "Onyx Portfolio Model_aaa.xlsm," which contains "a description of each solar energy system throughout multiple states developed by Onyx within that particular investment portfolio" and, "for each solar energy

system," lists "the projected operating expenses for the solar energy system, the projected revenue from the solar energy system, the asset's depreciation and Onyx's projected profit from the solar energy system." Compl. ¶ 55. Onyx also identifies "financial models for two other portfolios of Onyx solar energy systems and Onyx's debt finance model which itself includes models for four different financing structures." *Id*. ¶ 58.

Defendant argues that, under the analysis this Court recently applied in *Sapir v. Rosen*, No. 20-cv-6191, 2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021)—which he claims is "directly on point"—the Complaint here does not sufficiently specify the trade secrets allegedly misappropriated. *See* Def's. Mem at 12–15. But the allegations in that case are distinguishable, and their differences instructive here. In *Sapir*, the plaintiff alleged that its trade secrets included "proprietary formulas and methods for in-house development, construction, management and financing; pricing information; or deal and investment structures and strategies." 2021 WL 4482277, at *7 (cleaned up). It further alleged, in conclusory fashion, that, if disclosed, the documents would cause "irreparable harm" to the company's business. *Id*. at *3. The Court held that those vague allegations fell far short, reasoning that the plaintiff "fail[ed] to plead *which* of the numerous categories of documents they describe in their Complaint as trade secrets—as opposed to mere confidential or proprietary information." *Id*. at *6 (emphasis in original). It further reasoned that the plaintiffs failed to describe how the business derived any specific economic value from the proprietary formulas (and other documents) being maintained in secret, *id*. at *6 n.4, or what it is that the models do, *id*. at *7. *See also id*. at *7 ("Plaintiffs' mere invocation of proprietary formulas and methods is insufficient without an explanation of how those methods [and] processes . . . function, or the purpose for which they are used.").

Here, by contrast, Plaintiff (1) identifies the financial models alleged to be trade secrets in

detail, including, in at least one instance, citing a spreadsheet by name; (2) explains how Onyx derives value from them being maintained in secret; and (3) specifically articulates how the models function.  The Complaint describes the trade secrets, for instance, as "the financial models by which Onyx determines the commercial viability of solar Projects," and "structures the purchase and sale of portfolios of solar energy systems," Compl. ¶ 14, later also describing them as incorporating "a proprietary set of formulas which reflect Onyx's years of experience in the solar energy business," *id*. ¶ 56.  It explains that the models are valuable in that they pinpoint the financial worth of any given "solar energy system" and further "projects the value of the portfolio of solar energy systems to tax equity investors."  *Id*. ¶¶ 56–57.  It goes on the articulate how the model works—that it projects "operating expenses for the solar energy system, the projected revenue from the solar energy system, the asset's depreciation and Onyx's projected profit from the solar energy system."  *Id*. ¶ 55.  The Complaint also notes that, when the model projects the value of solar energy portfolios to tax equity investors, it accounts for "a host of potential revenue/support streams, including government subsidies, tax breaks, and other non-customer services."  *Id*. ¶ 57.

Rather than mirroring the threadbare allegations that the Court found insufficient in *Sapir*, the allegations here are more akin to those at issue in *Pauwels v. Deloitte LLP*, where the Court concluded that the formulas at issue alleged to be trade secrets were defined with sufficient specificity.  *See* No. 19-cv-2313, 2020 WL 818742, at *4 (S.D.N.Y. Feb. 19, 2020).  In other words, the instant allegations are more than sufficient to provide Defendant notice of the "general contours of the alleged trade secrets without compromising their secrecy and for Defendant to be put on notice of the claim."  *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-cv-8190, 2016 WL 1275659, at *4 (S.D.N.Y. Mar. 30, 2016).  Onyx has thus plausibly alleged that it possessed trade

secrets under the DTSA.

**B.  Onyx Plausibly Alleges that its Trade Secrets were Misappropriated**

The DTSA identifies "three theories of misappropriation: (1) acquisition, (2) disclosure, or (3) use." *AUA Priv. Equity Partners, LLC v. Soto*, No. 17-cv-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018).  The Complaint here adequately pleads at least two theories of misappropriation under the DTSA: acquisition and use.

Onyx's allegations first make out a textbook claim of misappropriation via acquisition.  To plead misappropriation through acquisition, a plaintiff must plausibly allege "acquisition of a trade secret of another by improper means."  *Id*.  The Complaint here provides a detailed timeline of Defendant's download of 10,507 files containing the aforementioned alleged trade secrets from a secure dataroom at 8:58 p.m. on May 15, 2021; it further alleges that Defendant did not have a legitimate purpose for downloading the documents, that he transferred them to a personal storage device, and, indeed, that he had only downloaded 11 files from the Onyx dataroom in all of 2021 prior to his activity on May 15.  Compl. ¶¶ 37–114.  These allegations are more than sufficient at the pleading stage, as even far narrower claims of access to trade secrets under "unusual circumstances" in the time leading up to an employee's departure have been held enough to allege acquisition under the DTSA.  *Lodging Sols., LLC v. Miller*, No. 19-cv-10806, 2020 WL 6875255, at *3 (S.D.N.Y. Nov. 23, 2020); *see also Expert Connect LLC v. Fowler*, No. 18-cv-4828, 2019 WL 3004161, at *2, *6 (S.D.N.Y. July 10, 2019) (acquisition sufficiently alleged based on a report showing actions consistent with the defendant copying files to her desktop, transferring them onto a USB device, and then deleting them); *see also Mickey's Linen v. Fischer*, No. 17-cv-2154, 2017 WL 3970593, at *11–12 (N.D. Ill. Sept. 8, 2017) (observing that misappropriation in DTSA cases "must often be proved through circumstantial evidence").

Defendant's arguments that the Complaint's allegations are insufficient to show that he knowingly used "improper means" to acquire the documents are unavailing.  Employees who "abscond with their employers' trade secrets, even in the absence of any subsequent use or disclosure" have been held to have improperly acquired such information.  *AUA Priv. Equity Partners LLC*, 2018 WL 1684339, at *6; *see also id.* at *5 (employee who had access to trade secrets for work-related purposes improperly "acquired" them under the DTSA when she transferred them to her personal Google Drive account); *Lodging Sols. LLC*, 2020 WL 6875255, at *3 ("Courts in this District have held that an employee copying trade secret information for purposes unrelated to her employment in violation of a confidentiality agreement constitutes misappropriation under the DTSA's acquisition prong.").  For this reason, among others, courts have observed that misappropriation is regularly proved by circumstantial evidence, and that such evidence does not fail to state a DTSA claim as a matter of law.  *See Mickey's Linen*, 2017 WL 3970593, at *11–12.  Indeed, the Complaint's allegations that Defendant undertook subsequent actions to conceal his access to trade secrets, such as by clearing his browser history and using private browsing, *see* Compl. ¶ 69, are themselves sufficient to raise an inference of conscious improper acquisition.  *See Waltree Ltd. v. Ing Furman Selz LLC*, 97 F. Supp. 2d 464, 468 (S.D.N.Y. 2000) (observing that "plaintiff has pleaded facts constituting strong circumstantial evidence of conscious misbehavior and recklessness").

Onyx's allegations also make out a claim of misappropriation via use.  The DTSA's definition of "use" includes any effort to avail oneself of a trade secret.  *See KCG Holdings, Inc. v. Khandekar*, No. 17-cv-3533, 2020 WL 1189302, at *11.  Here, the Complaint alleges that, some six weeks after his employment ended, Defendant continued to interact with the information he downloaded from the Onyx dataroom both on his company laptops and on his personal storage

device.  Compl. ¶¶ 87–91, 103.  And, "[u]pon information and belief," the Complaint further alleges that Defendant's wife was able to announce the formation of her own solar energy company "with unfettered access to Onyx's trade secrets which form the building blocks of a solar energy business."  *Id*. ¶ 113; *see also Next Commc'ns*, 2016 WL 1275659, at \*5 ("This Circuit has generally found that allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.") (cleaned up).  Onyx need not plead more at this stage, as, "without discovery, it is to be expected that Plaintiffs would have limited knowledge of the extent to which Defendant has used their trade secrets."  *Id*. at \*5; *see also Balance Point Divorce Funding LLC v. Scrantom*, 978 F. Supp. 2d 341, 353 (S.D.N.Y. 2013) (finding a plausible inference of use was raised where "knowledge of [the trade secret] would enable [the defendant] inevitably to better compete with [the plaintiff]").

The Court thus concludes that the Complaint plausibly alleges facts stating a claim for trade secret misappropriation under the DTSA.

## II.    The Complaint States a Claim for Breach of Fiduciary Duty

To plead a claim for breach of fiduciary duty under Delaware law, the Complaint must allege (1) the existence of a fiduciary duty, and (2) breach.  *See KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2012).[1]  Onyx plausibly alleges facts meeting both prongs, and thus states a claim for breach of fiduciary duty.

Defendant first argues that, despite his role as Onyx's General Counsel, the Complaint somehow fails to establish that he owed fiduciary duties for loyalty, care, and good faith.  Def's. Mem. at 20–21.  The Court disagrees.  First and foremost, some courts have observed that the role of general counsel, itself, carries fiduciary duties as a default matter under Delaware law.  *See,*

---

[1]    Delaware law applies where the fiduciary duty allegedly breached was owed to a partnership organized under the laws of Delaware.  *See Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 248 (S.D.N.Y. 2012).

*e.g., In re World Health Alternatives, Inc.*, 385 B.R. 576, 591 (Bankr. D. Del. 2008).  But in any event, the Complaint here specifically alleges that, as general counsel, Defendant was "one of the key managerial personnel" of the company and carried certain attendant managerial responsibilities—and that those responsibilities thus make him a fiduciary.  *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010) (finding, "based on [defendant's] title and high ranking position at [the company], that [defendant] was both an officer and one of the key managerial personnel of [the company] and, therefore, owed that company fiduciary duties").  Indeed, the Complaint alleges that Defendant was entrusted with managing many of Onyx's most critical matters, including the negotiation of all contracts for the development of the company's solar energy systems, as well as the financing arrangements for such development.  Compl. ¶¶ 18–25.  Allegations that Defendant had such managerial responsibility as Onyx's chief legal officer are adequate to establish that he owed fiduciary duties to the company under Delaware law.  *See, e.g., Sone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369–70 (Del. 2006).

Defendant next contends that, even if he did owe fiduciary duties of loyalty, care, and good faith, the exculpation provision in the company's agreement of limited partnership ("LPA"), read alongside Defendant's Employment Agreement, eliminates any fiduciary duties that he would otherwise have owed.  Def's. Mem. at 21–22.  This, too, is without merit.  Under the Delaware Revised Uniform Limited Partnership Act, fiduciary duties may be limited or eliminated, *see* 6 Del. C. § 17-1101(f), but only where the language of a partnership agreement clearly and unambiguously expresses the parties' intent to do so, *see Miller v. Am. Real Estate Partners, L.P.*, No. CIV.A.16788, 2001 WL 1045643, at *8 (Del. Ch. Sept. 6, 2001) ("[J]ust as investors must use due care, so must the drafter of a partnership agreement who wishes to supplant the operation of

traditional fiduciary duties . . . it is fair to expect that restrictions on fiduciary duties be set forth clearly and unambiguously.").  Moreover, fiduciary duties are to be limited only if they cannot be reconciled with the parties' duties as defined by a partnership agreement.  Where "reconciliation is possible, the court will apply default fiduciary duties in the absence of clear contractual language disclaiming their applicability."  *R.S.M. Inc. v. Alliance Cap. Mgmt. Holdings L.P.*, 790 A.2d 478, 497 (Del. Ch. 2001).

Here, there is no such clear and unambiguous language evincing that the parties sought to limit or do away with his fiduciary duties.  The provision in the Employment Agreement that Defendant argues is the best evidence of such a disclaimer simply provides that Defendant should render services "faithfully" and "to the best of his ability."  Def's. Mem. at 22 (quoting Emp. Agmt. § 7).  This is insufficient under Delaware law.  *See Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451, at *9 (Del. Ch. Apr. 20, 2009) (noting "the interpretive scales also tip in favor of preserving fiduciary duties under the rule that the drafters of chartering documents must make their intent to eliminate fiduciary duties plain and unambiguous").[2]

Having alleged that Defendant owed the company the fiduciary duties of loyalty, care, and good faith, the Complaint adequately pleads Defendant's breach of those duties because it plausibly alleges that he misappropriated Onyx's trade secrets.  "A breach of fiduciary duty occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of

---

[2]    Defendant's argument that Section 9.10(b)(iv)(V) of the LPA eliminates any fiduciary duty he otherwise would owe is similarly misplaced.  That provision provides that "when an Indemnitee is permitted or required to make a decision or take an action . . . with an express standard of behavior . . . such Indemnitee shall comply with such express standard but . . shall not be subject to any other or additional standard imposed by this Agreement or applicable law."  There is no "express standard of behavior" which would apply here to displace the default fiduciary duty which Defendant owed.  *C.f. Refco Grp. Ltd., LLC v. Cantor Fitzgerald, LP*, No. 13-cv-1654, 2014 WL 261068, at *21 (S.D.N.Y. June 10, 2014) (where the contract explicitly limited liability to "willful misconduct" or "gross negligence").

trade secrets, [or] misuse of confidential information." *Beard Rsch., Inc.*, 8 A.3d at 602. Defendant is alleged to have transferred more than 10,000 documents, a subset of which constituted trade secrets, to a personal storage device without a proper purpose for doing so, and to have continued to access and use the files long after his resignation from the company was effective. *See* Compl. ¶¶ 36–107; *see also PT China LLC v. PT Korea LLC*, No. 4456-VCN, 2010 WL 761145, at *7 (Del. Ch. Feb. 26, 2010) (finding that it is a violation of the duty of loyalty to use corporate "confidential and proprietary information for [] personal self-interest").

Contrary to Defendant's arguments, *see* Def's. Mem. at 23, the Complaint's breach-of-fiduciary-duty claim is independent of the breach of contract cause of action. "[T]he appropriate question [] is whether there exists an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same or similar conduct." *PT China*, 2010 WL 761145, at *7. "Put differently, the question is whether the plaintiff could bring an independent cause of action for breach of fiduciary duty if the parties had not signed a contract." *Metro Storage Int'l LLC*, 275 A.3d at 858. Even without the Employment Agreement, Onyx would have a fiduciary duty claim under the terms of the LPA and Defendant's role within the company as general counsel. *See In re WeWork Litig.*, No. 20202-0258-AGB, 2020 WL 6375438, at *12 (Del. Ch. Oct. 30, 2020) (observing that breach of fiduciary duty claims may move forward alongside breach of employment contract claims where they "depend on additional facts" or are "broader in scope, and involve different considerations in terms of a potential remedy").

The Court thus concludes that Onyx plausibly alleges a claim for breach of fiduciary duty.

## III.   The Complaint States a Claim for Breach of Contract

Finally, Defendant urges that the breach-of-contract claim be dismissed. The Employment Agreement at issue provides that Defendant must "never reveal or disclose Confidential

Information to any other person or third party," and to, "[u]pon termination of the employment relationship for any reason whatsoever . . . promptly deliver to [Onyx] all Confidential Information." Emp. Agmt. at § 1(a)-(c). It goes on to define "Confidential Information" to include:

> without limitation, the Company's financial data, scopes of production, customer/client data and names, marketing data, supplier information, selling methods, business strategies or initiatives, systems, processes, proprietary systems . . . strategic planning and similar matters, [and] trade secret[s] . . . .

*Id.* at § 1(b). Defendant contends, notwithstanding the plain language of his Employment Agreement, that "the pleaded facts do not adequately allege any of the conduct underlying Plaintiff's breach-of-contract theories." Def's. Mem at 23. Namely, that there are no plausible allegations of: (1) "copying Confidential Information onto his personal devices," (2) "failing to return that Confidential Information to Onyx upon his departure," and (3) "accessing and using Onyx's Confidential Information after his employment at Onyx ended." *Id.* As discussed at length above, and for the additional reasons below, these arguments are unpersuasive.

The Complaint, first, alleges that Defendant had an obligation to only use Onyx Confidential Information "in the ordinary course of performing [his] duties to the Company." Emp. Agmt. at § 2, and that he improperly copied it to a personal device. Onyx alleges Defendant transferred more than 10,000 documents, many of which allegedly contained Confidential Information under the terms of his Employment Agreement, to his personal storage device shortly before his resignation. Second, the Complaint alleges that, although Defendant was specifically asked to "sign and return [a] Certification" that he had taken actions to delete or return Confidential Information, he never did so. Compl. ¶¶ 97–98; Ex. 6. Finally, the Complaint alleges that Defendant continued to access Confidential Information after the termination of his employment, and even after he was asked to return it. *Id.* ¶¶ 97–108.

While the Court expresses no opinion as to the ultimate merits of the contract—or any other—claim, Onyx has plainly alleged the existence of an Employment Agreement giving rise to contractual obligations and the breach of those obligations.  Accordingly, the breach-of-contract claim may also proceed to discovery.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is denied.[3]  No later than two weeks from the date of this order, the parties shall submit a joint letter proposing next steps in this action.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 24.


SO ORDERED.

Dated:     January 25, 2023
           New York, New York

                                              _____
                                              Hon. Ronnie Abrams
                                              United States District Judge

---

[3]     In light of the Court's denial of the motion to dismiss, the parties' joint request for an adjournment of discovery pending resolution of the motion to dismiss, *see* Dkt. 45, is denied as moot.